329 So.2d 222 (1976)
Myrtis C. HUETT
v.
INSURANCE COMPANY OF NORTH AMERICA et al.
No. 7344.
Court of Appeal of Louisiana, Fourth Circuit.
March 16, 1976.
Rehearings Denied April 13, 1976.
Writ Refused June 4, 1976.
*223 Tonry & Mumphrey, Richard A. Tonry, Chalmette, for plaintiff-appellant.
Ralph S. Johnson, New Orleans, for defendants-appellees.
Before GULOTTA, BOUTALL, SCHOTT, MORIAL and BEER, JJ.
GULOTTA, Judge.
This is an appeal from a dismissal of plaintiff's workmen's compensation claim for total and permanent disability. Plaintiff, employed as a cashier at Puglia's Supermarket, was injured on November 21, 1969, when she fell on a broken piece of sidewalk, adjacent to Puglia's, as she was leaving the store to go home for lunch.
In reasons for judgment, the trial judge concluded "plaintiff has suffered an aggravation of a pre-existing arthritis, and that she is disabled from this condition". However, the trial judge also found that plaintiff "was not injured with the scope and course of her employment". Plaintiff's suit was dismissed. We reverse.
On appeal, we are initially confronted with the issue of whether an employee is in the course of her employment and entitled to receive workmen's compensation benefits when she is injured on her employer's premises, but while leaving the premises for lunch.
Plaintiff contends workmen's compensation coverage has been extended to employees who were injured within a reasonable interval of their arrival and departure from their place of employment before and after work. Although recognizing the rule that generally workmen's compensation benefits do not cover employees injured during the lunch period, plaintiff logically argues that if an employee, injured under certain circumstances while going to and from his employment, before and after work, is entitled to coverage, an employee injured under similar circumstances while going to lunch is also entitled to coverage.
It is defendants' contention that workmen's compensation has not been extended to employees injured during an unpaid lunch hour when the lunch period is not under the direction or supervision of the employer and the employees are not furnished an area for lunch, but are permitted to leave the premises.
As we stated in Lavier v. Maclellan, 247 So.2d 921 (La.App.4th Cir. 1971), a determination of whether an employee injured during a lunch period is deemed to have been injured while in the course of his employment depends upon the facts in each case. In the case of Grey v. Avondale Service Foundry, 305 So.2d 639 (La.App.4th Cir. 1974), we reiterated the recognized and well settled rule that a liberal construction is traditionally afforded the workmen's compensation act.
*224 The general rule with regard to lunch hour accidents is set forth in Professor Malone's treatise, Louisiana Workmen's Compensation Law and Practice, §§ 165, 182, 183: [1]
"Ordinarily, an employee who leaves his employer's premises and takes his noon hour meal at home or some other place of his own choosing is outside the course of his employment from the time he leaves the work premises until he returns. In the absence of a further showing it is assumed that the nature of his employment has not affected his personal eating practices, and the mere fact that he expects to return to his job at the end of the lunch hour is not enough to warrant the inclusion of this period within the course of his employment.* * *
* * * * * *
"The extent of the demand that working conditions will make upon the eating practices of employees will vary from case to case and it is not easy to say in advance when the lunch period can be included in the course of employment. * * * [footnote deleted]

"The rules discussed elsewhere in this chapter may be applicable to lunch hour accident. * * *" (emphasis supplied)
The general rule excluding coverage is not without exceptions. See Smith v. Orleans Management Corporation, 242 So.2d 288 (La.App.4th Cir. 1970). As recognized in Lavier v. Maclellan, supra, an exception to the general rule may be made if plaintiff is required to eat on the employer's premises, or under the employer's supervision, or on the employer's time, or if the lunch hour is taken under circumstances necessary to suit the employer's, rather than the employee's, convenience. See also Clark v. Employers Liability Assur. Corporation, 27 So.2d 464 (La.App.1st Cir. 1946). However, plaintiff's lunch period does not factually come within the exceptions contemplated in the Smith, Lavier and Clark cases.
As argued by plaintiff and pointed out by Professor Malone in Louisiana Workmen's Compensation Law and Practice, §§ 169, 193, 194, coverage is extended within a reasonable interval before and after working hours when the injury occurs on the employer's premises. Section 169 states:
"The observation has been made in previous sections that an employee is engaged in the course of his employment while he is actually engaged in his employer's work even before or after working hours. Furthermore, even if he has finished the day's work and is preparing to leave, or is in the act of leaving, he is entitled to a reasonable period while still on the premises which is regarded as within the course of the employment. The working day embraces these intervals just as it includes reasonable periods for rest, relaxation or the attendance of personal needs. This applies also to periods prior to the actual beginning of work under similar circumstances.
* * * * * *
"The extension of compensation protection to periods prior to and after working hours under the circumstances described above does not reach beyond the premises of the employer. It should be borne in mind that as a general rule an accident that occurs while the employee is going to or returning from work is outside the course of employment, and we are faced with the arbitrary proposition that an employee who is injured while proceeding directly from his work may have compensation if the accident occurred at a place one foot within the employer's gate, or compensation would be denied if he were injured *225 outside on the public highway. This seemingly arbitrary distinction is entirely justifiable from an administrative viewpoint. Unless the employee is to be protected during the entire journey to and from work, a line must be drawn at some point, and the boundary of the employer's premises is as definite as any that can be devised."
Our workmen's compensation act envisions extension of coverage to employees from the time they reach the employer's premises until they depart, and this includes a reasonable interval before and after working hours. In Carter v. Lanzetta, 249 La. 1098, 193 So.2d 259 (1966), a case factually similar to the instant one, workmen's compensation coverage was afforded to a grocery and sandwich shop employee who was injured at the end of the work day after purchasing pastries in the employer's shop. Plaintiff, in Carter, lost her footing on the cement steps adjoining the front door. The accident occurred approximately 20 or 30 minutes after the conclusion of the work day. See also Serean v. Kaiser Aluminum & Chemical Corporation, 277 So.2d 732 (La.App.4th Cir. 1973), where coverage was afforded to an employee who was injured in the employer's parking lot as he alighted from his car to report to work. The injury occurred on the employer's premises prior to the commencement of the work day.
Considering the Carter and Serean decisions, it would appear inconsistent to afford coverage for a reasonable period before and after working hours and not to afford coverage for a reasonable time span during which the employee is going to or coming from lunch, provided the injury occurs on the employer's premises. Permitting such an inconsistency would be in conflict with the liberal construction afforded the workmen's compensation act by the courts of this state.
Accordingly, we apply the reasonable entry and exit theory to employees injured on the employer's premises within a reasonable interval of going to and returning from lunch.
In this connection, the testimony indicates that plaintiff commenced her lunch period at approximately 3:00 p.m. She stopped briefly for 10 to 15 minutes for some articles in the store, then left the store to go to lunch. After leaving the store, plaintiff, while walking on the sidewalk adjacent to the employer's store, was required to walk around a delivery truck which was parked at Puglia's back entrance and blocking the sidewalk. When she attempted to return to the sidewalk after going around the truck, she fell on a piece of broken sidewalk. Huett testified that the place where she fell was near the back entrance to the store, close to the corner of the building, and on Puglia's property. The fact that plaintiff fell on the employer's premises was uncontradicted and, therefore, must be accepted as true. See Olds v. Ashley, 250 La. 935, 200 So.2d 1 (1967).
The cases of Brooks v. Cal-Metal Pipe Corporation of Louisiana, 81 So.2d 462 (La.App.1st Cir. 1955) and Smith v. Orleans Management Corporation, supra, relied on by defendants, are not authority for denying coverage to an employee injured on the employer's premises during a reasonable interval of going to and departing from work. In Brooks, the employee was denied coverage when injured during the lunch period. However, the injury occurred approximately three-quarters of a mile from the employer's premises. In Smith, the court denied coverage to an employee injured off the employer's premises during a lunch period when he attempted to cross a canal on the way to a nearby cafe.
Also, in Lavier, this court denied coverage to a golf course greenskeeper who was injured when struck by a golf ball while on the employer's premises (the golf course) during a lunch period. Clearly, Lavier came within the general rule, i.e., that *226 workmen's compensation coverage is not afforded to an employee while at lunch. However, unlike the instant case, Lavier was not in the process of leaving or returning to the employer's premises and, therefore, would not come within the reasonable entry and exit theory exception to the general rule.
Considering the circumstances of the instant case, we conclude that plaintiff is entitled to coverage under the workmen's compensation act.
Having so concluded, we now turn to the question of the extent of plaintiff's disability. The record supports the conclusion of the trial judge that plaintiff had suffered an aggravation of a pre-existing arthritic condition and was disabled as a result of the accident.
The medical evidence ranged from the testimony of Dr. Joseph E. Dugas, a general surgeon, who concluded that a possibility existed plaintiff suffered an aggravation of a degenerated intervertebral lumbosacral disc at the L-5, S-1 level, to the testimony of Dr. George R. Cary, Jr., an orthopedist, who concluded that plaintiff's disability of the lower back was more likely an aggravation of the degenerative changes in the lower back caused by trauma, i.e., the accident, rather than from a normal flare-up. Furthermore, Dr. William M. Pusateri, an orthopedic surgeon, stated that it is medically probable that as a result of the trauma, plaintiff's back was imparied by the onset of symptoms after the accident.
It is significant that the doctors' conclusions (to a lesser or greater extent) that the accident caused an aggravation of the disc problem was influenced by the fact that Huett was asymptomatic before the injury and became symptomatic after the accident. In this connection, plaintiff, plaintiff's sister and plaintiff's son all testified that Mrs. Huett suffered no back problems prior to the fall, however, after the injury, she suffered severe pain in the hip, leg and lower back. According to these witnesses, subsequent to the date of the injury, Mrs. Huett was unable to do housework or engage in recreational activities, including fishing, which she was accustomed to doing prior to the accident. Plaintiff was unable to continue her employment at Puglia's and was terminated approximately eight months after the accident because of frequent absence from work resulting from pain attributed to the accident.
In determining whether a claimant's disability is causally related to an accident, great weight attaches to the fact of a sudden change from a condition of health or ablebodiedness prior to an accident to one of disability immediately following thereafter. See Ardoin v. Houston Fire and Casualty Insurance Company, 235 So.2d 426 (La.App.3d Cir. 1970); Stipkovich v. Empire Menhaden Company, Inc., 319 So.2d 484 (La.App.4th Cir. 1975).
The record also supports the trial court's conclusion that plaintiff suffered a disability from the injury. Plaintiff testified that her duties as a cashier required standing for periods from five to eight hours, and bagging of groceries when the bag boys were not available. Other duties assigned to her included occasional placing of stock on the grocery shelves.
Dr. Cary stated that because of the accident, Mrs. Huett would be unable to perform strenuous work activity, such as bending or lifting heavy objects. It was his opinion that standing on her feet at the cash register for periods of five to eight hours could precipitate discomfort in the lower back. Dr. Pusateri indicated that depending on the individual, the serious nature of plaintiff's injury could prevent her from carrying on her activities as a cashier.
The medical and lay testimony considered, we are in agreement with the *227 conclusion of the trial judge that Mrs. Huett was disabled as a result of the aggravation of the pre-existing arthritic condition. However, our examination of the record reveals plaintiff's disability to be a temporary, rather than permanent, total disability.
Based on his final examination of plaintiff on April 13, 1972, Dr. Dugas concluded that plaintiff did not have sufficient objective evidence of disability to warrant further diagnostic or therapeutic procedures. Dr. Dugas was of the opinion that there was no reason why plaintiff could not perform the work she had been doing. Dr. Pusateri did not rule out the possibility that a person suffering with injuries similar to those injuries suffered by the plaintiff could return to work. In addition, Dr. Cary, who did not examine plaintiff after December 18, 1970, was of the opinion that plaintiff's standing on her feet at the cash register could precipitate discomfort and bother her lower back. However, Dr. Cary also stated that his usual experience in dealing with aggravation of a pre-existing disc condition is that it usually gets worse for several months, after which it resolves itself and tapers off. According to Dr. Cary, the general trend is to improve.
Under the circumstances, we cannot conclude that plaintiff successfully carried the burden of proof required to establish a total and permanent disability. Tyler v. Owens Illinois, Inc., 289 So.2d 893 (La.App.4th Cir. 1974). However, we do conclude that plaintiff suffered a temporary total disability from the date of the accident, November 21, 1969 through April 13, 1972, the date Dr. Dugas indicated plaintiff could return to work. Therefore, plaintiff is entitled to benefits based on temporary total disability for a period of 124 weeks.
Plaintiff's request for penalties and attorney's fees is without merit. LSA-R.S. 23:1201.2, in pertinent part, states:
§ 1201.2 Failure to pay claims; discontinuance; penalties and attorney's fees

"A. Any employer whose liability for claims arising under the provisions of this Chapter is not covered by insurance, shall pay the amount of any claim due under the provisions of this Chapter, within sixty days after receipt of written notice. Failure to make such payment within sixty days after receipt of notice, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the employer to a penalty, in addition to the amount of claim due, of 12% of the total amount of such claim, payable to the claimant, together with all reasonable attorney's fees for the prosecution and collection of such claim, . . ."
In the instant case, we cannot say the insurance company's failure to pay workmen's compensation to claimant was arbitrary, capricious or without probable cause. A serious issue was presented as to whether plaintiff's injury occurred within the course of her employment. Therefore, penalties and attorney's fees are denied.
Accordingly, the judgment of the trial court is reversed. Judgment is now rendered awarding plaintiff $37.44 per week for a period of 124 weeks or a total of $4,642.56,[2] together with legal interest thereon,[3] and in addition thereto, medical benefits provided for under the act.[4]
*228 REVERSED AND RENDERED.
BEER, Judge (dissenting in part).
Being in full agreement with the majority's computation of the amount due plaintiff-appellant (in the event that liability attaches) but in disagreement with the finding of liability on the part of defendantappellee I respectfully dissent from that portion of the majority opinion.
This is a close case and I have much respect for the basic premise upon which the majority rests its finding of liability under the act. Nevertheless, I believe that the determination that plaintiff-appellant was "not injured within the course and scope of her employment" was, ultimately, a factual determination by the trial court which was not, in my opinion, manifestly erroneous.
NOTES
[1] We note that certain earlier Louisiana Circuit Court decisions have extended recovery to plaintiff's injury during the lunchtime break. See Whitfield v. City of New Orleans, Orl. No. 8115 (1921); LeBourgeois v. Lyon Lumber Co., 6 La.App. 216 (1st Cir. 1927).
[2] LSA-R.S. 23:1221(1) provides for 65% of wages during the period of disability not to exceed three hundred weeks. Huett testified she worked 36 hours per week at a rate of $1.60 per hour. Acts 1968 Ex.Session, No. 25, § 2, as incorporated in LSA-R.S. 23:1202 (in effect at time of the accident) provided for maximum compensation of $45.00 per week.
[3] Lanclos v. Homer Knost Construction Company, 258 So.2d 224 (La.App.4th Cir. 1972), writs refused, 261 La. 467, 259 So.2d 915 (1972) and 261 La. 469, 259 So.2d 916 (1972).
[4] See LSA-R.S. 23:1203.